UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW M. GUTOWSKI,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

17-CV-1246

DECISION AND ORDER

---

On November 30, 2017, the plaintiff, Matthew M. Gutowski,[1] brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On November 2, 2018, Gutowski moved for judgment on the pleadings, Docket Item 14, and on January 30, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 18. On February 20, 2019, Gutowski replied. Docket Item 19.

For the reasons stated below, this Court grants Gutowski's motion in part and denies the Commissioner's cross-motion.

---

[1] Due to a typographical error, the plaintiff's name is sometimes incorrectly spelled "Gutkowski" in the docket. See Docket Item 19 at 1 n.1.

**BACKGROUND**

I.     **PROCEDURAL HISTORY**

On December 9, 2013, Gutowski applied for disability insurance benefits. Tr. 95. He claimed that he had been disabled since October 31, 2012, due to major depression, trouble concentrating, anxiety, head trauma, migraine headaches, double vision, post concussion syndrome, post traumatic headaches, and post traumatic stress disorder. *Id.*

On July 2, 2014, Gutowski received notice that his application was denied because he was not disabled under the Act. Tr. 105-08. He requested a hearing before an administrative law judge ("ALJ"), Tr. 109-11, which was held on December 9, 2016, Tr. 47. The ALJ then issued a decision on February 10, 2017, confirming the finding that Gutowski was not disabled. Tr. 26. Gutowski appealed the ALJ's decision, but his appeal was denied, and the decision then became final. Tr. 1-3.

II.     **RELEVANT MEDICAL EVIDENCE**

The following summarizes the medical evidence most relevant to Gutowski's objection. Gutowski was examined by several different providers but only one—Jessica Englert, Ph.D., a clinical neuropsychologist—is of most significance to this Court's review of the ALJ's decision.

### Jessica J. Englert, Ph.D., Clinical Neuropsychologist

On March 28, 2016, and again on July 26 the same year, Dr. Englert, a clinical neuropsychologist, evaluated Gutowski. Tr. 334-340. Gutowski was referred to Dr.

Englert for "evaluation given longstanding cognitive, functional, and mood concerns." Tr. 334.

Gutowski told Dr. Englert that he had "multiple hits to the head from various altercations" over the past five years. *Id.* He "reported that he is having difficulty with memory" and that "he has slower processing of information overall." *Id.* Gutowski also reported that he lives with his mother and stepfather and "is hoping to be placed within a transitional housing program which will assist him with employment and stabilization while moving forward in his life." Tr. 336.

Dr. Englert found that Gutowski "demonstrated strong intellectual functioning" and "strong intellectual abilities across all domains assessed." Tr. 338. He also "demonstrated strong working memory." *Id.* She determined that despite Gutowski's "history of multiple head injuries . . . he has had minimal, if any, changes in cognitive abilities related to such injuries." Tr. 339.

But Dr. Englert also found that Gutowski had "a severe level of depression and mood symptoms related to a history of traumas." Tr. 339. Although Dr. Englert "believe[d] that [Gutowski] would be able to complete a Bachelor's degree once [his] mood symptoms are stabilized," she also believed that "in the meantime, . . . he should be placed within transitional housing or a transitional support program so that he may gain independence in living, which will help with the mood symptoms and help him to secure employment at least on a part-time basis." Tr. 340. "It is hoped that he can start on a part-time basis for employment since it has been quite a long time since he has been engaged in employment and he does need to readjust, particularly with his

significant mood symptoms." *Id.* "He should not be put at risk for relapse by increased stressors related to vocational difficulties." *Id.*

Dr. Englert provided a "series of strategies to assist with daily functioning" that she recommended Gutowski implement. *Id.* Among those recommendations was "work[ing] in brief periods of time (30 to 45 minutes) with a brief break (approximately 5 minutes) when he [is] encouraged to engage in a physical task such as brief exercise, as cardiovascular activity may increase blood flow and refocus attention." *Id.*

## III. THE ALJ'S DECISION

In denying Gutowski's application, the ALJ evaluated Gutowski's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

4

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Gutowski had not engaged in substantial gainful activity from his alleged onset date through the date last insured— March 31, 2016. Tr. 19. At step two, the ALJ found that Gutowski had the following severe impairments: "migraines headaches[,] depression[,] and anxiety." *Id.* At step three, the ALJ determined that these severe impairments did not medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

5

In assessing Gutowski's RFC, the ALJ determined that Gutowski could perform medium work as defined in 20 C.F.R. § 404.1567(c),[2] except he was limited to unskilled work with a specific vocational preparation level[3] of 1 or 2. Tr. 21. The ALJ based this finding in part on "the statements of [Dr.] Englert, . . . that the claimant may wish to implement various strategies consistent with unskilled work in order to assist with daily functioning." Tr. 24. The ALJ assigned "great weight" to these statements, noting that

> [t]hese statements are generally consistent with the record, which although documents the claimant's depression, anxiety and related symptoms, and documents that the claimant's headaches are brought on in part due to mental stress and exertion, otherwise shows that the claimant was observed to be cooperative and oriented with appropriate hygiene, good eye contact, clear speech, and intact attention at his treatment visits and was observed to have a normal mood and affect, intact attention, normal concentration, and normal memory at other physical care visits, and which shows the extent of the claimant's activities of daily living . . . suggesting that the claimant retains the ability to perform unskilled positions with an SVP of 1 or 2.

*Id.* The ALJ did not give "great weight" to all Dr. Englehart's "strategies to assist with daily functioning," however. *See id.* He gave "little weight to [her] statement . . . that [Gutowski] should work in brief periods of time with a brief break if required to perform physical activites, as this statement is generally inconsistent with the claimant's

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[3] "Specific Vocational Preparation [("SVP")] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, Appendix C § II, 1991 WL 688702 (4th ed. 1991). SVP Level 1 includes jobs requiring a "[s]hort demonstration only" for training. *Id.* SVP Level 2 includes jobs requiring "[a]nything beyond short demonstration up to and including 1 month" for training." *Id.*

6

unremarkable physical examinations and with his own reported abilities to walk 2 to 3 miles at [sic] lift up to 50 to 100 pounds." *Id.*

At step four, the ALJ determined that Gutowski "was capable of performing past relevant work as a warehouse worker." Tr. 25. The ALJ found that Gutowski was able to perform his past work both as he actually performed that work and as that work is generally performed throughout the economy. Tr. 26.

## **LEGAL STANDARDS**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Social Security Administration ("SSA")] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her

7

disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Gutowski argues that the ALJ erred "in misstating and failing . . . to properly evaluate the favorable opinion of consulting clinical neuropsychologist Dr. Englert." Docket Item 14-1 at 12-17. For the following reasons, this Court agrees.

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). "Among the ALJ's legal obligations is the duty to adequately explain his reasoning in making findings on which his ultimate decision rests, and in doing so he must address all pertinent evidence." *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)). "[T]he ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from that evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)) (emphasis in original).

Here, the record includes statements from Dr. Englert reflecting her judgment that Gutowski's anxiety, depression, and mood symptoms were so severe that he was able to work no more than part time at the time he was evaluated. *See* Tr. 334-40. Specifically, she found that Gutowski "is experiencing a severe level of depression and mood symptoms related to a history of traumas." Tr. 339. She thought that Gutowski might well recover from his mental impairments, predicting that "he would be able to complete a Bachelor's degree once mood symptoms are stabilized." Tr. 340. But she noted that "in the meantime, I believe that he should be placed within transitional

8

housing or a transitional support program so that he may gain independence in living, which will help with the mood symptoms and help him to secure employment *at least on a part-time basis.*"4  *Id.* (emphasis added).  She said that "[i]t is hoped that he can start on a part-time basis for employment since it has been quite a long time since he has been engaged in employment and he does need to readjust, particularly with his significant mood symptoms."  *Id.*  She explained that Gutowski "should not be put at risk for relapse by increased stressors related to vocational difficulties."  *Id.*  In social-security speak, Dr. Englert opined that in light of Gutowski's mental impairments, he could work only part time without placing him "at risk for relapse."  *Id.*

The ALJ purportedly assigned "great weight" to Dr. Englert's opinion, but he completely ignored the aspects of her opinion that were most favorable to Gutowski.  Instead, the ALJ focused on Dr. Englert's "series of strategies to assist with daily functioning."  Tr. 24 (citing Tr. 340).  And the ALJ extrapolated from those "strategies" the conclusion—contrary to Dr. Englert's opinion—that Gutowski "retains the ability to perform unskilled positions."  *Id.*

For example, Dr, Englert suggested that Gutowski could "make a 'to do list' that allows for some flexibility and is realistic in terms of the tasks to be accomplished" on a daily basis.  *See* Tr. 340.  From this, the ALJ inferred—quite reasonably—that Gutowski had some basic capability to function with that strategy.  Tr. 24.  But the fact that Gutowski's psychologist believed that he needed "strategies" to assist with the tasks of

---

4 The Commissioner argues that by "at least on a part-time basis," Dr. Englert was suggesting that Gutowski could work part-time or more—that is, full-time.  *See* Docket Item 18-1 at 15.  Taken in context, however, it is clear that she was saying the exact opposite.

9

his daily life suggests that doing more than basic daily functioning—engaging in employment, for example—might indeed be difficult for him. *See* Tr. 340. Moreover, the ALJ did not address Dr. Englert's opinion that Gutowski's depression and mood disorders were so severe that he could not work more than part time. *See id.* And the ALJ ignored Dr. Englert's explicit finding that Gutowski "should not be put at risk for relapse by increased stressors related to vocational difficulties." *See id.*

Perhaps even more significantly, the ALJ completely misunderstood one of Dr. Englert's recommendations—the only one with which the ALJ took issue. In this regard, he noted that he gave "little weight to the statement of Dr. Englert that [Gutowski] should work in brief periods of time with a brief break if required to perform physical activities." Tr. 24. The ALJ gave "little weight" to this "statement" because, he explained, it was "generally inconsistent with the claimant's unremarkable physical examinations and with his own reported abilities to walk 2 to 3 miles at [sic] lift up to 50 to 100 pounds." Tr. 24. But Dr. Englert did not say that Gutowski needed brief breaks from brief periods of physical labor. *See* Tr. 340. On the contrary, Dr. Englert said that after Gutowski worked for thirty to forty-five minutes, he should be given a brief break and "encouraged to engage in a physical task such as brief exercise" because such "cardiovascular activity may increase blood flow and refocus attention." *Id.* In other words, Dr. Englert believed that Gutowski's anxiety and depression were so severe that he needed five-minute exercise breaks every thirty minutes or so. *See id.* So contrary to the ALJ, Dr. Englert was not recommending that Gutowski's physical activity be limited; in fact, she was recommending the exact opposite. *See id.*

10

For the same reason, the ALJ was incorrect in finding that Dr. Englert's recommendation was "inconsistent with the claimant's unremarkable physical examinations and with his own reported abilities to walk 2 to 3 miles [and] lift up to 50 to 100 pounds." Tr. 24. The fact that Gutowski was physically capable of walking two to three miles at a time or lifting up to 100 pounds is irrelevant to the judgment reflected by Dr. Englert in this recommendation—that Gutowski's mental impairments severely impact his ability to sustain work and focus for prolonged periods of time and that interim exercise might help remedy that. The ALJ's misreading of Dr. Englert's recommendation requires remand for that reason alone.

SSA regulations required the ALJ to "evaluate every medical opinion" received. 20 C.F.R. § 404.1527(c). "Although the ALJ was not required to mention every piece of evidence, providing 'an accurate and logical bridge' required him to confront the evidence in [Gutowski's] favor and explain why it was rejected before concluding that [his] impairments did not impose more than a minimal limitation on [his] ability to perform basic work tasks." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)). Here, the ALJ's failure to address Dr. Englert's recommended work limitations, as well as his complete misunderstanding of a key recommendation as noted above, lead to the conclusion that he did not meet those requirements. Therefore, this case is remanded for a full evaluation of Dr. Englert's opinion regarding the severity of Gutowski's mental impairments and so that the ALJ can reconsider her recommendation about the brief exercise breaks necessary for Gutowski to work. Without any such analysis, this Court cannot "be satisfied that the claimant has had a full hearing under the . . . regulations

11

and in accordance with the beneficent purposes of the Social Security Act." *Moran*, 569 F.3d at 112 (quoting *Cruz*, 912 F.3d at 11).[5]

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 18, is DENIED, and Gutowski's motion for judgment on the pleadings, Docket Item 14, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:　　May 28, 2019
　　　　　　Buffalo, New York

　　　　　　　　　　　　　　　　　　　　*s/ Lawrence J. Vilardo*
　　　　　　　　　　　　　　　　　　　　LAWRENCE J. VILARDO
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[5] Gutowski also argues that the ALJ erred by "formulating a benign function-by-function physical RFC without any medical authority" and that the ALJ should have further developed the record. Docket Item 14-1 at 17-22. And he argues that the ALJ inadequately addressed an opinion from a vocational rehabilitation counselor. Docket Item 14-1 at 22-25. Because Gutowski's "case must return to the agency either way for the reasons already given, the Commissioner will have the opportunity on remand to obviate th[ese] disputes altogether by" fully explaining the basis of Gutowski's physical RFC, developing the record further if necessary, and fully addressing the vocational rehabilitation counselor's opinion. *See Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019). Therefore, this Court does not address these issues.